PEDRO CASTRO LÓPEZ, demandante y apelante, *v.* LA AUTORIDAD DE TRANSPORTE y THE GREAT AMERICAN INDEMNITY COMPANY, demandadas y apeladas.

Núm. 10300.—*Sometido:* Febrero 5, 1951. *Resuelto:* Abril 26, 1951.

466

*Romany & Romany,* abogados del apelante; *R. Rivera Zayas, G. Rivera Cestero* y *Milton F. Rúa,* abogados de las apeladas.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

El 9 de septiembre de 1949 y como entre 3 y 4 de la tarde, el apelante viajaba por la Avenida Ponce de León en un ómnibus independiente con dirección a San Juan. Al llegar a la Parada 26 y en el sitio designado para tomar y dejar pasajeros el vehículo se detuvo y bajó el apelante a la acera norte de la avenida. Antes de que la guagua reasumiera su marcha, el apelante, con el fin de dirigirse a la acera opuesta, pasó por la parte delantera del vehículo siendo arrollado por otra guagua de la Autoridad de Transporte que en aquellos momentos pasaba en la misma dirección. Esta última pasó a un pie o pie y medio de separación de la guagua independiente y después de ocurrir el accidente paró a dos pies de distancia de la otra guagua. El apelante sufrió serias lesiones y en reclamación de los daños sufridos instituyó este pleito contra la Autoridad de Transporte y contra su aseguradora la Great American Indemnity Company.

La Corte inferior, por los méritos de la prueba, desestimó la demanda, fundándose en que la causa próxima del accidente fué la negligencia del demandante.

No existe controversia en cuanto a los hechos. La única cuestión a resolver es, si habiendo ocurrido el accidente en la forma indicada, el apelante tiene derecho a una sentencia por los daños personales que sufrió.

La tesis del apelante descansa en que él no fué negligente al abandonar la acera y tratar de cruzar al lado opuesto, ya que habiendo descendido de una guagua que todavía estaba detenida para dejar y tomar pasajeros, tenía

derecho a confiar en que cualquier vehículo que viniese en la misma dirección que la guagua sería parado al aproximarse a aquélla, o por lo menos tomaría su conductor las precauciones pertinentes para no causar daño a algún pasajero que descendiese de la guagua para dirigirse al lado opuesto de la avenida.

El artículo 17(*h*) de la Ley de Automóviles y Tránsito de 5 de abril de 1946 ((1) pág. 599) prescribe:

"Al acercarse al cruce o unión de calles o caminos a una casa escuela durante horas en que sea probable la entrada o salida de estudiantes, la velocidad deberá ser reducida, dando debido aviso con el aparato correspondiente. *Las mismas precauciones deberán tomarse al acercarse a un tranvía urbano que esté detenido para tomar o dejar pasajeros.*" (Subrayado nuestro.)

Se observará que el artículo 17(h) que acabamos de transcribir se refiere por sus propios términos al tranvía urbano y no al ómnibus.   Hace varios años desapareció de Puerto Rico el último tranvía que operaba en la zona metropolitana y desde muchos años antes de aprobarse la vigente Ley de Automóviles y Tránsito, la inmensa mayoría de los pasajeros en dicha zona eran transportados por ómnibus. El tranvía eléctrico que operaba en la zona metropolitana tenía sus raíles tendidos por un lado de las vías públicas por donde discurría, y al igual que su competidor el ómnibus, dejaba y recibía pasajeros por el costado contiguo a la acera.   Esta circunstancia virtualmente equiparaba el tranvía al ómnibus a los efectos del tránsito.   Y si consideramos que ambas formas de transportación servían los mismos fines y que no existe fundamento alguno para pensar que fuera el propósito legislativo proteger contra accidentes de tránsito a una pequeña parte de los pasajeros que viajaban por la zona urbana y negar la misma protección a los demás, es fácil comprender que fué la intención legislativa al usar en el citado artículo 17(*h*) el vocablo "tranvía urbano", incluir al ómnibus dentro de ese concepto a

los efectos de la Ley de Automóviles y Tránsito. Así interpretado el artículo 17(h), pasaremos a aplicar sus disposiciones a los hechos del presente caso.

El citado artículo sólo exige que al aproximarse al tranvía en las condiciones indicadas, el conductor de un automóvil deberá reducir la velocidad dando el debido aviso con el aparato correspondiente. En tales condiciones, el peatón que desciende del ómnibus a un sitio de seguridad como es la acera no tiene ningún derecho a presumir que por el hecho de no oír el aparato de alarma, no pueda un automóvil, aunque a reducida velocidad, pasar por el costado del tranvía que está detenido y hacerle daño. Lo que resulta de la ley es que el conductor de automóvil que no cumple con las disposiciones del artículo 17(h) incurre en negligencia; mas esto no autoriza al pasajero a dejar de tomar todas las precauciones que una persona razonable adoptaría al disponerse a cruzar una vía pública. Y si el pasajero deja de tomar tales precauciones y de ese modo contribuye al accidente, es culpable de negligencia contribuyente y en consecuencia no tiene derecho a compensación. En el presente caso, podemos tomar conocimiento judicial de que la Avenida Ponce de León es una vía pública de mucho tránsito, de suerte que cualquier persona razonable advierte el grave peligro que asume al tratar de pasar por frente de una guagua detenida sin fijarse antes si viene algún otro vehículo por detrás de la guagua que pueda arrollarlo al entrar el pasajero al carril por el cual marche dicho vehículo. Como hemos visto, la guagua de la Autoridad de Transporte venía a una velocidad moderada y si bien pasó a un pie o pie y medio de separación de la guagua independiente, no implica esto negligencia por parte de su conductor, pues dado el ancho de dichos vehículos y el de los carriles por donde deben transitar, no podría exigírsele que pasase a una mayor separación sin invadir el carril correspondiente a los vehículos que marchan en dirección contraria. Sin duda, si el demandante antes de lanzarse a la zona de peligro

mira en dirección a Río Piedras al llegar al costado izquierdo de la guagua, no hubiera abandonado el sitio de seguridad en que se hallaba pues fácil le hubiera sido ver la guagua de la Autoridad de Transporte que se aproximaba. ■ Concedemos que el chófer de la Autoridad de Transporte no cumplió con el requisito de dar aviso con el aparato de alarma y por ello incurrió en negligencia. Pero esta negligencia no fué la causa única del accidente pues también concurrió como causa del mismo la negligencia del demandante al no tomar las precauciones que una persona razonable hubiera tomado dentro de las circunstancias.

El apelante, en apoyo de su tesis al efecto de que el demandante tenía derecho a confiar en que ningún otro vehículo pasaría mientras el ómnibus estuviese detenido, cita varios casos poniendo especial énfasis en *Ross* v. *West*, 30 So.2d 310 (Miss. 1947) y en *Manor* v. *Gagnon*, 32 A.2d 688 (N.H. 1943). En el de *Ross* v. *West*, una niña de 13 años que viajaba en un ómnibus se apeó de éste y pasando por frente del mismo trató de cruzar la calle siendo arrollada por un taxi que marchaba en la misma dirección en que venía el ómnibus que la había traído. El taxi marchaba a una velocidad no menor de 25 millas por hora y no usó aparato de alarma. La demandante obtuvo un veredicto por $1,500 y apeló el dueño del taxi. En la apelación, el demandado insistió en que la corte a quo no había tomado en consideración la negligencia contribuyente de la demandante. Al confirmar la sentencia, contestando el argumento del apelante, se dijo por el tribunal que la corte a quo había transmitido al jurado instrucciones sobre negligencia contribuyente y que sin duda el jurado tomó esto en consideración cuando trajo un veredicto por $1,500 solamente, a pesar de las serias lesiones recibidas por ella. En otras palabras, si en Mississippi no hubiera existido la doctrina de negligencia comparativa,(¹) se hubiera declarado sin lugar la demanda por haber existido negligencia contribu-

---

(¹) Código Anotado de Mississippi, Título 10, Cap. 3, Sec. 1454.

yente. Y en el caso de *Manor* v. *Gagnon*, se dijo que como el estatuto exigía que los automóviles parasen al acercarse a un ómnibus o a otro vehículo utilizado en la transportación de pasajeros, los automóviles tenían el deber de reducir la velocidad y si necesario fuera de parar para evitar daños a los que descendiesen del ómnibus; y la demandante no siendo culpable de negligencia contribuyente tenía derecho a presumir que el demandado cumpliría con el deber que expresamente le imponía el estatuto de parar su vehículo si necesario fuere. Pero no debemos perder de vista que el artículo 17(h) antes citado, no exige que el conductor que se aproxima al tranvía pare su vehículo.

De perfecta aplicación al presente caso es el de *Branigan* v. *Demarest*, 160 Atl. 319 (N. J. 1932). Allí, un ómnibus había parado en la intersección de dos calles para dejar y recibir pasajeros. La demandante, que fué la primera o segunda en descender del ómnibus, pasó por el frente del mismo, de derecha a izquierda y en el instante en que salía del frente del ómnibus y entraba en la zona destinada para los peatones cruzar la calle fué arrollada por un taxi propiedad del demandado. La prueba de la demandante fué al efecto de que ella al empezar a caminar por frente del ómnibus miró hacia su derecha y al llegar al extremo izquierdo del mismo miró hacia su izquierda y en ese preciso instante, ya en la zona destinada para el cruce de peatones, fué alcanzada por un taxi el cual venía en la misma dirección del ómnibus, a un pie de separación del costado izquierdo de éste, a una velocidad de 20 ó 25 millas por hora y sin dar aviso con el aparato de alarma, según admitió el propio demandado. A base de esta prueba, la corte desestimó la demanda a virtud de una moción de *nonsuit*. En apelación, la sentencia fué confirmada, fundándose el tribunal en que había existido negligencia contribuyente. Reconoció la corte el derecho preferente que tenía la demandante sobre el demandado—que viajaba en la misma dirección del ómnibus— a cruzar la calle y confiar en que el demandado tomaría todas

las precauciones exigidas por la Ley de Tránsito para no hacerle daño. Pero agregó que este derecho de la demandante no la relevaba de su obligación legal de ejercitar cuidado razonable para evitar ser lesionada por un vehículo cuyo conductor no hubiera tomado en cuenta el derecho preferente de ella a pasar; que de igual manera que el demandado venía obligado a velar por la seguridad personal de los peatones que cruzan por frente al ómnibus, éstos, a su vez, venían obligados a ejercitar el debido cuidado para cerciorarse, antes de cruzar la calle, de que no viniese vehículo alguno por la izquierda del ómnibus que pudiera causarles daño.

■ Convenimos con el apelante en que en el presente caso erró la corte de instancia al resolver que el accidente fué causado por la exclusiva negligencia del demandante. No cabe duda de que el chófer de la Autoridad de Transporte fué negligente al dejar de dar aviso con el aparato de alarma; pero en esa negligencia concurrió la del demandante al no ejercitar el cuidado que una persona razonable hubiera ejercitado dentro de las circunstancias. Mas, como la apelación se da contra la sentencia y no contra sus fundamentos y el resultado de aquélla es correcto, *procede su confirmación.*